IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 20, 2016

## STATE OF TENNESSEE v. BRANNON HARRISON SHOCKLEY

**Appeal from the Criminal Court for Knox County**
**No. 105172    Steven W. Sword, Judge**

---

**No.  E2016-00261-CCA-R3-CD – Filed October 12, 2016**

---

The Defendant, Brannon Harrison Shockley, pleaded guilty in the Knox County Criminal Court to aggravated assault, a Class C felony, with an agreed sentence of four years with the manner of service of the sentence to be determined by the trial court.  *See* T.C.A. § 39-13-102(a)(1)(A)(iv) (2014) (amended 2015) (aggravated assault by strangulation). The court denied alternative sentencing.  On appeal, the Defendant contends that the trial court abused its discretion by denying him alternative sentencing.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ALAN E. GLENN, J., joined.

Michael T. Cabage, Knoxville, Tennessee, for the appellant, Brannon Harrison Shockley.

Herbert H. Slatery III, Attorney General and Reporter; Robert W. Wilson, Assistant Attorney General; Charme P. Allen, District Attorney General; and Randall Kilby, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case relates to an assault perpetrated against the Defendant's then-girlfriend. The Defendant pleaded guilty to aggravated assault.  Although the guilty plea hearing transcript is not included in the record on appeal, the presentence report was received as an exhibit at the sentencing hearing without objection and reflects the following factual basis for the guilty plea:

On 11/7/2014 at 0416 hours, officers responded to a domestic assault . . . The Defendant strangled his girlfriend . . . as she slept. The victim's entire upper body was deep red with bruising on her right collar bone. Her throat was red and scratched. The victim stated she was strangled to the point she had trouble breathing and almost lost consciousness. The Defendant then destroyed the victim's [C]ricket phone valued at $100. The Defendant fled the area, returned while officers were with the victim and punctured the victim's car tire (value $100). The Defendant was found intoxicated on I-275 South at [I-]640 walking on the side of the interstate. The Defendant had a strong smell of marijuana on his breath and person and slurred speech. The Defendant stated he had smoked marijuana and taken a hydro.

The presentence report noted the Defendant's version of events, which reflected that he and the victim were drinking, the Defendant "snuck & took some nerve meds," he and the victim argued, and he broke his cell phone. The Defendant stated that he did not remember what happened and that the victim told him that he was "very high." The Defendant admitted to pushing and yelling at the victim but denied "putting hands" on her. The Defendant stated that the victim told him she knew he had not touched her.

The presentence report reflects that the Defendant had previous convictions for vandalism, causal exchange of a controlled substance, and possession of drug paraphernalia. The report reflects that the Defendant received judicial diversion in 2010 for casual exchange and that diversion was revoked. The Defendant admitted drinking alcohol at age eighteen and using various drugs, including marijuana and Xanax, beginning at age fourteen. The Defendant reported that he drank large amounts of alcohol, that he had periods of sobriety due to concerns about memory loss and his anger issues while intoxicated, and that he had committed crimes while intoxicated.

No witnesses testified at the sentencing hearing. Defense counsel stated that "regular probation" rated the Defendant a medium risk but was willing to "take him," and that enhanced probation and community corrections "thought he would be appropriate." Counsel noted that the Defendant had been in custody for several months and had been employed before his arrest. Counsel requested a regular probation placement in order for the Defendant to resume working and noted that the inpatient treatment facility used by enhanced probation and community corrections had a nine-month waiting period, after which time the Defendant's job might be terminated due to his absence. Counsel stated that the Defendant had a place to live away from the victim. Counsel noted that this was the Defendant's first felony conviction, although he had prior misdemeanor convictions, and that the Defendant had successfully completed misdemeanor probation.

The prosecutor agreed that all three alternative sentencing programs considered the Defendant an appropriate candidate. The prosecutor stated, though, that the programs' evaluations noted the Defendant's extensive substance abuse history, and the prosecutor requested that the Defendant undergo an inpatient substance abuse treatment program and live at a halfway house before being released on probation. The prosecutor stated that both the enhanced probation and community corrections programs wanted the Defendant to complete inpatient treatment.

The trial court noted its concern that the Defendant was "intoxicated to the point that [he] engaged in violent behavior" and that the Defendant did not remember the assault. The court stated that "we've got to address the substance issues before we can put him on probation" and that the Defendant would be required to follow the treatment recommendations before being released to probation or community corrections. The court addressed the Defendant and said, "[If] you want a shot at probation, I'll give you one."

Defense counsel noted the lengthy wait time to be admitted to an inpatient treatment facility, and the Defendant interjected that he had spoken to two inpatient facilities and that one had a nine-month waiting list. The Defendant said that he would be willing to have outpatient treatment and, when questioned by the court, stated that he had never received outpatient treatment. When asked by the court if he used drugs prior to the assault, the Defendant said,

> [T]he only thing I do is smoke weed and drink . . . I know weed is a drug, and I really do believe that I need treatment for that, but it's just my mom's got both of my kids right now . . . I want to be able to be out there with my kids and not have to sit in here for another nine months waiting[.]

The Defendant agreed that before the assault, he drank alcohol and smoked marijuana and that he committed the assault while intoxicated. The prosecutor noted that the Defendant told the community corrections evaluator he took Xanax before the assault.

The trial court noted that it could "easily" send the Defendant to prison and that the Defendant's options were to wait for a treatment placement or to go to prison. The Defendant said, "I understand that, but . . . if I'm going to sit here for nine to 12 months waiting on that just to get out and be on probation, I mean, what[—]" The trial court interjected, found that the Defendant was not amenable to correction because he was more concerned with being released from confinement than obtaining treatment, and sentenced the Defendant to serve his sentence in confinement.

After a break in the proceedings, the court provided the Defendant an opportunity to be heard before making additional findings. The Defendant stated that he preferred to

receive a treatment placement but that he was most concerned with reuniting with his children. He explained that his mother cared for his daughters, that his daughters' mother was not involved with them, and that the Defendant wanted to help his mother. The Defendant noted that while he was in jail, he had not been able to pay child support.

The trial court found that the Defendant had a history of alcohol and substance abuse, that the Defendant did not have a "terribly extensive" criminal history, and that enhanced probation and community corrections programs would accept the Defendant if he received inpatient treatment and lived at a halfway house. The court found that the Defendant had been on probation previously "and obviously, that did not take." The court stated that based upon the Defendant's statements, he was not amenable to rehabilitation. The court noted that it believed the only reason the Defendant requested probation was to procure his release from jail as soon as possible, "and so I don't think he's . . . at a point right now where probation's going to be successful." The Defendant asked if he could attempt to find another inpatient treatment facility without a long waiting period, and the court responded that the Defendant could obtain treatment in the Department of Correction. This appeal followed.

## I.  Denial of Alternative Sentencing

The Defendant contends that the trial court abused its discretion by denying his request for alternative sentencing, arguing that the court ordered the Defendant's sentence be served in confinement in order to punish the Defendant for expressing his desire to get out of jail and care for his children, a factor outside the scope of the Sentencing Act. *See* T.C.A. § 40-35-103(1) (2014) (governing whether incarceration is appropriate). The State responds that the record supports the court's decision denying alternative sentencing because the Defendant had a history of drug use, had received probation for a previous drug offense, was not amenable to correction, and did not accept his role in the assault.

The standard of review for questions related to probation or any other alternative sentence, including community corrections, is an abuse of discretion with a presumption of reasonableness for within-range sentences reflecting a decision based upon the principles and purposes of sentencing. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). Generally, probation is available to a defendant sentenced to ten years or less. T.C.A. § 40-35-303(a) (2014). A defendant who is ineligible for probation might still be a candidate for community corrections. *Id*. § 40-36-106(a)(1)(A) (2014); *see State v. Kendrick*, 10 S.W.3d 650 (Tenn. Crim. App. 1999). A defendant who is a felony offender and would otherwise be unfit for probation due to a history of drug or alcohol abuse or mental health problems and "whose special needs are treatable and could be served best in the community rather than in a correctional institution" may be eligible for

community corrections. T.C.A. § 40-36-106(c) (2014). The burden of establishing suitability for an alternative sentence rests with a defendant, who must demonstrate that probation will "'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Souder*, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (quoting *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)); *see* T.C.A. § 40-35-303(b); *State v. Russell*, 773 S.W.2d 913, 915 (Tenn. 1989).

A sentence is based upon "the nature of the offense and the totality of the circumstances," including a defendant's background. *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991); *see State v. Trotter*, 201 S.W.3d 651, 653 (Tenn. 2006). A trial court is permitted to sentence a defendant to incarceration when:

> (A) [c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) [c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) [m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1)(A)-(C); *see Trotter*, 201 S.W.3d at 654.

The Defendant correctly notes that the trial court initially made its decision without having considered the appropriate principles and purposes of sentencing. We interpret the Defendant's argument as stating that the court's determination should not be afforded a presumption of reasonableness. However, the record reflects that the court subsequently articulated its reasoning. Although this method is unorthodox, and is not recommended, the record reflects that after providing the Defendant an additional opportunity to be heard, the court articulated its reasons for denying the Defendant's request for alternative sentencing, and we afford it a presumption of reasonableness.

We conclude that the trial court did not abuse its discretion by sentencing the Defendant to serve his sentence in confinement. The record reflects that the Defendant had a lengthy history of drug abuse starting at age fourteen and alcohol abuse starting at age eighteen. The Defendant had no memory of the assault because of his smoking marijuana, drinking alcohol, and taking Xanax. At the sentencing hearing, the Defendant admitted smoking marijuana regularly.

In its discussion of the Defendant's amenability to correction, the trial court found that measures less restrictive than confinement had been applied unsuccessfully to the

Defendant, and the record reflects that the Defendant previously received the benefit of judicial diversion, which was later revoked, indicating an inability to comply with the terms of his release. The court's findings implicitly discredited the Defendant's statement that he wanted to be released from confinement in order to care for his children. The court believed the Defendant was not genuinely interested in drug treatment, but rather concerned about securing his immediate release from confinement. The presentence report reflects that the Defendant did not take responsibility for the assault, that the Defendant denied assaulting the victim, and that the Defendant said the victim stated she knew he never touched her. The court did not abuse its discretion by denying alternative sentencing, and the Defendant is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.


_____
ROBERT H. MONTGOMERY, JR., JUDGE